UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CHARLES N. CLEMONS,

    Petitioner,

                                                               Case No. 1:06-cv-220

v

                                                                Hon. Wendell A. Miles

KENNETH McKEE, Warden,

    Respondent.

_____/

ORDER ADOPTING MAGISTRATE JUDGE'S
REPORT AND RECOMMENDATION

On November 4, 2008, United States Magistrate Judge Ellen S. Carmody issued a Report and Recommendation ("R & R") recommending that Charles N. Clemons's petition for writ of habeas corpus be denied. Petitioner has filed objections to the R & R. The court, having reviewed the R & R filed by the United States Magistrate Judge in this action as well as the amended petition, the respondents' answer, and the relevant portions of the file, agrees with the recommended disposition contained in the R & R.

The amended petition raises several claims for habeas relief: one claim related to an eyewitness identification made of petitioner at his preliminary examination, three additional claims related to the preliminary examination, including the prosecution's amendment of the charges and sufficiency of the evidence to bind petitioner over for trial, and a related claim that

the evidence was insufficient to support petitioner's conviction.  With respect to the pretrial identification claim, the Magistrate Judge concluded that the Michigan Court of Appeals' determination that the admission of identification testimony of eyewitness Shae Redfield at petitioner's trial did not violate petitioner's due process rights was neither contrary to nor involved an unreasonable application of clearly established federal law, and was not based on an unreasonable determination of the facts in light of the evidence presented.   The Magistrate Judge also concluded that petitioner's remaining claims were procedurally defaulted.

Petitioner has asserted four objections to the Magistrate Judge's conclusions on his claim that admission of witness Shae Redfield's identification testimony at trial violated his due process rights.  Two of these objections appear to be directed to what he contends was a misapplication of the "totality of the circumstances" test to determine whether Redfield's initial identification of him at the preliminary examination was impermissibly suggestive.  The remaining objections are directed to the Magistrate Judge's analysis on particular elements of the test.

"A conviction based on identification testimony following pretrial identification violates the defendant's constitutional right to due process whenever the pretrial identification procedure is so 'impermissibly suggestive as to give rise to a very substantial likelihood of irreparable misidentification.'"  Thigpen v. Cory, 804 F.2d 893, 895 (6th Cir. 1986) (quoting Simmons v. United States, 390 U.S. 377, 384 (1968)).  "Because 'reliability is the linchpin' of this analysis, ... courts have used two steps to find the use of identification testimony unconstitutional."  Id.

(quoting Manson v. Brathwaite, 432 U.S. 98, 114 (1977)).  "First, the court evaluates the undue suggestiveness of the preidentification encounters."  Thigpen, 804 F.2d at 895.  "If the encounters were unduly suggestive, the court evaluates the 'totality of the circumstances' to determine whether there are nevertheless sufficient independent indicia of reliability."  Id. (citing Neil v. Biggers, 409 U.S. 188, 199-200 (1972)).  In determining whether, under the totality of the circumstances, the identification was reliable even though the confrontation procedure was suggestive, the factors to be considered include the following:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation.

Neil, 409 U.S. at 199-200.  In conducting its analysis, the court must bear in mind that the "primary evil to be avoided is 'a very substantial likelihood of irreparable misidentification.'"  Id. at 198 (quoting Simmons, 390 U.S. at 384).

In her R & R, the Magistrate Judge assumed, for purposes of analysis of petitioner's claim, that the circumstances of Shae Redfield's initial identification of petitioner at the preliminary examination were "unnecessarily suggestive."  R & R at 19.[1]  Because even an

---

[1] At the preliminary examination, petitioner's counsel sought a physical lineup.  Even though the prosecution did not object, the judge presiding over the hearing denied petitioner's request for a lineup, and during her testimony Redfield proceeded to identify both petitioner and his co-defendant, who were present in the courtroom wearing orange jumpsuits.  However, there is no reason here to assume, as petitioner's counsel apparently did, that a lineup would have been preferable to an in-court identification.  Although the "practice of showing suspects singly to persons for the purpose of identification, and not as part of a lineup, has been widely condemned,"
(continued...)

unduly suggestive identification procedure may nonetheless survive due process scrutiny if the identification is reliable, the Magistrate Judge did not err in proceeding directly to the second step of the relevant inquiry to determine the reliability of the identification.  The question is therefore whether the Redfield's identification was reliable under the totality of the circumstances, even if the in-court confrontation was suggestive.

In his objections, petitioner attacks the Magistrate Judge's conclusions on the first factor of the relevant analysis:  the witness' opportunity to view the suspect.  Specifically, petitioner argues that the Magistrate Judge erred in concluding that Redfield was "able to clearly view [petitioner's] face from very close range."  R & R at 19.  Petitioner contends that the record indicates that Redfield did not get a good look at the face of the taller of the robbers.  (Petitioner is taller than his co-defendant.)

Redfield did testify that she did not get a good look at the taller man before he put a mask over his face.  However, as the Magistrate Judge also correctly observed, Redfield also testified that she had the opportunity to see the faces of both men for about five seconds before they donned masks.  In addition, as the Michigan Court of Appeals noted in its decision on petitioner's direct appeal, although Redfield's encounter with the two suspects in the bank vestibule was brief, it was a face-to-face encounter with sufficient lighting.  Under the

---

[1](...continued)
Stovall v. Denno, 388 U.S. 293, 302 (1967), "[i]t is obvious that risks of suggestion attend either form of confrontation and increase the dangers inhering in eyewitness identification."  United States v. Wade, 388 U.S. 218, 229 (1967 (footnote omitted).   There are "dangers inherent in eyewitness identification and suggestibility inherent" in any pretrial identification.  Id. at 235.  Under the circumstances of this case, any court would be hard-pressed to conclude that a physical lineup would have been preferable, for due process purposes, from the in-court identification which occurred.

circumstances, the Magistrate Judge did not err in her analysis by assuming that Redfield was able to "clearly view" petitioner's face.

Petitioner also attacks the Magistrate Judge's application of the third factor of the analysis: the accuracy of the witness' prior description. Specifically, petitioner argues that the Magistrate Judge erred in concluding that this factor did not appear to be relevant because there was no evidence that Redfield had provided police with a description of the bank robbers. Petitioner points to a written statement Redfield testified she gave to police on the scene immediately after the robbery. (A copy of the statement, which Redfield was shown during her trial testimony, is attached as Appendix I to petitioner's brief in support of his amended petition (docket no. 50)).

Although the Magistrate Judge erred to the extent that she stated that there was no evidence in the record that Redfield provided police with a description of the robbers, she did not err in failing to weight the prior description factor in petitioner's favor in applying the "totality of the circumstances" test. A review of Redfield's written statement indicates that her general description of the robbers was largely accurate. Redfield described them as two African-American males, wearing black jackets, black gloves, and boots. Redfield also described one of the men as being taller (about six feet tall) than the other (about five feet seven inches). Although her description was not detailed, nothing about it indicates that Redfield's prior written description of petitioner was not accurate – apart from her identifying the color of his coat as black (but more about this coat or jacket below).

Petitioner's remaining objections to the Magistrate Judge's conclusion that his

5

identification claim does not provide a basis for habeas relief are directed to the Magistrate Judge's overall conclusion that the "totality of the circumstances" test did not support a determination that Redfield's in-court identification during the preliminary examination was unreliable.  Petitioner argues that Redfield testified that she did not see the taller man's face.  This is simply wrong; Redfield did testify that she saw both men's faces, albeit briefly.  Petitioner also argues that the Magistrate Judge's analysis is flawed because she made an error in her application of the prior description element of the test, by failing to give relevance to what petitioner contends was the prior written "non-description" Redfield gave to police.

     The court concludes that the Magistrate Judge reached a correct overall conclusion that application of the totality of the circumstances test does not establish petitioner's entitlement to relief.  In addition to the two factors of the test already discussed above, the Magistrate Judge correctly noted, regarding the second factor – the witness' degree of attention– that Redfield was not a disinterested bystander or casual observer.  It should also be noted that although Redfield was not a disinterested bystander, neither was she a dazed victim.  Redfield saw both men before they put on masks and directed her back into the bank, and she testified that she did not become nervous until she saw that one of them had a gun.  Even after she had been directed to go back into the bank, Redfield – who was not robbed of her own personal cash – was in sufficient calm possession of her faculties to hide her wallet while the robbers were demanding money from the bank tellers.  Finally, as the Magistrate Judge also correctly noted regarding the remaining two factors – the witness' certainty and the time elapsed between the crime and the identification –  Redfield was unequivocal in her identification, which was made only 12 days

after the robbery. Given the substantial factors weighing in favor of a conclusion that the identification was reliable, the fact that the identification occurred in petitioner's presence at the preliminary hearing while he was wearing a jail uniform does not render the identification so impermissibly suggestive as to give rise to a substantial likelihood of irreparable misidentification. The Magistrate Judge therefore did not err in her overall analysis of petitioner's claim.

In any case, even if the trial court erred in admitting Redfield's identification testimony, certain facts indicate that any such error would have been harmless. Specifically, petitioner – who testified in his own defense at trial – admitted that he was wearing a dark green – not black – colored plaid Nautica-brand jacket on the day of the robbery. Petitioner, who was apprehended fleeing from police while wearing this jacket, did not claim that "Leroy," the elusive second passenger (and, according to petitioner, the presumptive second robber) in petitioner's car that day, ever wore the jacket. In an apparent surprise to the defense at trial, during closing arguments the prosecution strongly stressed the fact that petitioner's rather distinctive jacket strongly resembled the one captured in still photographs taken by a bank surveillance camera during the robbery and admitted as exhibits. The prosecution further noted that these photographs showed the same robber wearing what appears to have been a white shirt underneath his jacket – just as petitioner testified he wore that day. Finally, the prosecution even noted that the photographs do not show one of the robbers wearing white shoes – which are what petitioner testified the theoretical second robber "Leroy" wore that day – but instead black boots, like those belonging to petitioner. The existence of this evidence that petitioner was in the bank

during the robbery independently establishes his guilt, apart from any identification made by Redfield based on her observations at the time the robbers entered the bank.  Combine this visual evidence with evidence that petitioner was arrested actively fleeing from his vehicle strewn with marked bank cash (a circumstance which in no way undermines the reliability of the identification), and no juror could have any reasonable doubt of petitioner's guilt.

Petitioner's remaining objections are directed to the Magistrate Judge's conclusion that all of his other claims are procedurally defaulted.  Although petitioner disagrees with this conclusion, he has pointed to no specific error in the Magistrate Judge's extensive analysis of the procedural default issue.  The court can find no error in her analysis.[2]

The court adopts the Magistrate Judge's R & R as the decision of the court.  Judgment will be entered accordingly.

Entered this 22nd day of December, 2008.

/s/ Wendell A. Miles
Wendell A. Miles, Senior Judge

---

[2]Petitioner has also objected to the Magistrate Judge's conclusion that the evidence was sufficient to support his conviction.  This particular conclusion was not necessary, insofar as the Magistrate Judge correctly concluded that petitioner had failed to show good cause for his procedural default of this claim.  However, as noted above, the court concludes that the evidence was constitutionally sufficient to support petitioner's conviction on the charges.